# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| RICARDO BEZE PRATES, ROXANA M. SAADE DIAZ GRANADOS, FERNANDO DE ANDRADE, on behalf of themselves and all others similarly situated, )))))| |
| Plaintiffs, ) | |
| vs. ) | Case No.: 6:16-CV-217-ORL-41-CEM |
| ) | |
| WESTGATE RESORTS, LTD., a Florida limited partnership, ))) | |
| Defendant. ) | |

**DEFENDANT WESTGATE RESORT, LTD.'S DISPOSITIVE MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT [D.E. 32] AND <u>INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u> (ORAL ARGUMENT REQUESTED)**

Westgate Resorts, Ltd. ("Westgate") moves to dismiss each claim in Plaintiffs' Amended Class Action Complaint [D.E. 32] (the "First Amended Complaint" or "FAC") pursuant to Fed. R. Civ. P. 12(b)(6). The FAC still fails to state a plausible claim for relief under either the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") or the Florida Vacation Plan and Timesharing Act, Fla. Stat. § 721.01 *et seq.* (the "Timeshare Act"). In this second attempt to plead a claim, Plaintiffs fail to plead each of the required elements of FDUTPA and still hinge the success of their Timeshare Act violation solely on the success of their FDUTPA count, so they do not identify an actionable violation of the Timeshare Act.

## <u>INTRODUCTION</u>

Plaintiffs are Brazilian nationals who toured a Westgate timeshare resort in Orlando. Plaintiffs chose to take the tour offered in Portuguese. After the tour, Plaintiffs decided to buy.

The purchase documents were in English. Plaintiffs closed on their purchases, and signed the closing documents written in English.

Now, two to four years later, Plaintiffs seek to cancel their purchases. Plaintiffs' allege that Westgate violated the Timeshare Act and the FDUTPA because Westgate neither provided an independent interpreter to explain the closing documents to them in Portuguese nor provided them an independent translation of the closing documents into Portuguese. Their FDUTPA claim hinges on the single contention that, had the Plaintiffs been able to read the closing documents in Portuguese, they would not have purchased their timeshares. Their Timeshare Act claim relies solely on the fact that Plaintiffs participated in a sales presentation in Portuguese their preferred language, but did not receive copies of the English language contracts translated into Portuguese.

## RELEVANT PROCEDURAL HISTORY

1.      On February 9, 2016, Plaintiffs filed their Complaint [D.E. 1] seeking relief pursuant to FDUTPA and the Timeshare Act.

2.      On April 4, 2016, Westgate filed its Motion to Dismiss [D.E. 15] the Complaint.

3.      On May 9, 2016, Plaintiffs filed their Unopposed Motion for Extension of Time to File Motion for Class Certification [D.E. 25].

4.      On May 18, 2016, the Court denied, without prejudice, Plaintiffs' Unopposed Motion for Extension of Time to File Motion for Class Certification [D.E. 26].

5.      On August 4, 2016, the Court granted in part and denied in part Westgate's Motion to Dismiss the Plaintiffs' first Complaint in its Order [D.E. 31].

6.      On August 18, 2016, Plaintiffs filed their Amended Class Action Complaint. Westgate now moves to dismiss.

## PLAINTIFFS' ALLEGATIONS

Plaintiff de Andrade, a foreign national residing in Brazil, purchased a Westgate-branded resort timeshare interest located in Orlando, Florida in 2012.[1]  Likewise, Plaintiffs Granados and Prates, also foreign nationals residing in Brazil, purchased a timeshare interest in the Orlando resort in 2014.[2]

Granados and Prates toured separately from de Andrade, and each received discounted theme park tickets for use in Orlando to do so.[3]  Each chose to take the resort tour offered in Portuguese and to receive the marketing brochure in Portuguese.[4] Each decided to buy a timeshare interest and each signed transaction documents written in English, including a Purchase Agreement, RESPA Servicing Disclosure Statement, Truth in Lending Disclosure, Good Faith Estimate, Note, Credit Application, Warranty Deed and Lien on Real Property, and an Acknowledgment of Representations, among other documents (together, the "Purchase Documents").[5] Four years after de Andrade purchased and two years after Granados and Prates purchased a timeshare interest, they sued Westgate.

Count I alleges Westgate committed a deceptive and unfair practice under FDUTPA when Westgate conducted the timeshare resort tour in Portuguese, gave Plaintiffs a marketing brochure in Portuguese, and then provided English-language Purchase Documents for Plaintiffs to sign.[6] Plaintiffs allege they would not have purchased the timeshare interests had they received the Purchase Documents in Portuguese.  In their FAC, Plaintiffs now seek (1) damages

---

[1] FAC, ¶¶ 17–18.
[2] FAC, ¶¶ 15–16.
[3] FAC, ¶¶ 32, 35.
[4] FAC, ¶¶ 31–39, Exh. "A."
[5] FAC, ¶ 43.
[6] FAC, ¶¶ 57–72.

"in the amount of the difference between the value of the timeshare interests that Defendant Westgate lead Plaintiffs and Class Members to believe they would be purchasing versus the value of the timeshare interests Plaintiffs and Class Members actually purchased";[7] (2) "damages in the amount of the purchase price actually paid by them as they would not have purchased timeshare interests from Defendant Westgate in the first instance but for the deceptive and unfair trade practices alleged herein";[8] (3) "declaratory and injunctive relief that requires Defendant Westgate to provide Plaintiffs and Class Members with accurate translations, in the same language Defendant Westgate used to market and sell to Plaintiffs and Class Members, of the sales contracts, credit applications[,] and sale-related disclosures originally executed by, or provided to, Plaintiffs and Class Members when they purchased a timeshare interest from Defendant Westgate";[9] and (4) "declaratory and injunctive relief from the Court declaring and determining that the ten-day statutory rescission period which follows the sale of a timeshare interest, pursuant to Sections 721.06 and 721.10, Florida Statutes, shall begin to run anew from the date such translated documents are provided to Plaintiffs and Class Members and that Plaintiffs and Class Members shall have all rights and remedies available to them under Sections 721.06 and 721.10, Florida Statutes, following Defendant Westgate providing such translated documents to them."[10]

Count II alleges Westgate violated the Timeshare Act by conducting the sales presentation in Portuguese, but preparing the Purchase Documents in English. In so doing, Plaintiffs allege, Westgate failed to provide "a full and fair disclosure of the terms of the timeshare interest they purchased . . . in violation of Section 721.02(3), Florida Statutes" and

[7] FAC, ¶ 68.
[8] FAC, ¶ 69.
[9] FAC, ¶ 71.
[10] FAC, ¶ 71.

violated Section 721.26(7)(b) in relation to the "creation, promotion, sale, operation, or management of any timeshare plan" as alleged in Plaintiffs' Count I.[11] By virtue of these alleged violations of Chapter 721, Florida Statutes, Plaintiffs claim they and Class Members (1) "have been damaged and are entitled to recover damages to the extent permitted by law, in an amount to be proven at trial";[12] (2) are entitled to rescission "of the timeshare purchase contracts they and Class Members have executed . . . as a result of the practices alleged herein to have occurred in violation of Florida Statutes Chapter 721";[13] (3) are entitled to "equitable relief and to enjoin Defendant Westgate from conducting tours and sales presentations at Westgate-branded resorts in a non-English language while failing to provide sales contracts, credit applications[,] and sale-related disclosures to consumers in both English and in that same language";[14] (4) are entitled to "declaratory and injunctive relief that requires Defendant Westgate to provide Plaintiffs and Class Members with accurate translations, in the same language Defendant Westgate used to market and sell to Plaintiffs and Class Members, of the sales contracts, credit applications[,] and sale-related disclosures originally executed by, or provided to, Plaintiffs and Class Members when they purchased a timeshare interest from Defendant Westgate";[15] and (5) are entitled to "declaratory and injunctive relief from the Court declaring and determining that the ten-day statutory rescission period which follows the sale of a timeshare interest, pursuant to Sections 721.06 and 721.10, Florida Statutes, shall begin to run anew from the date such translated documents are provided to Plaintiffs and Class Members and that Plaintiffs and Class Members shall have all rights and remedies available to them under Sections 721.06 and 721.10, Florida

---

[11] FAC, ¶¶ 75–80.
[12] FAC, ¶ 81.
[13] FAC, ¶ 81.
[14] FAC, ¶ 82.
[15] FAC, ¶ 83.

Statutes, following Defendant Westgate providing such translated documents to them."[16]

Based on the allegations in the two Counts, and on Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs still seek to certify a monolithic class of non-English speaking consumers who in the last four years attended a tour of a Westgate-branded timeshare resort in a language other than English and then subsequently executed a sales contract and other written sales-related disclosures in the English language.[17]

## MEMORANDUM OF LAW

## I. PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE CLAIM EITHER FOR DAMAGES OR EQUITABLE RELIEF.

Plaintiffs' Count I claim for damages under FDUTPA requires them to plead plausible facts establishing *each* of three required elements for monetary relief: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.[18] A claim for injunctive relief under FDUTPA, however, "requires an allegation that the consumer is in a position to complain (that he or she is aggrieved by the alleged violation) and that the violation has occurred, is now occurring, or is likely to occur in the future."[19] Plaintiffs' FAC fails to provide the "grounds" for either kind of relief under FDUTPA. Plaintiffs were required to plead more than labels and

---

[16] FAC, ¶ 83.

[17] FAC, ¶¶ 49–56. The Court ruled in its Order [D.E. 31], at 4 n. 2 that it would decline to address the viability of Plaintiffs' putative class at this stage in the litigation. Accordingly, Westgate will not raise these arguments again in this Motion to Dismiss the FAC. To date, Plaintiffs not have filed either a renewed motion seeking an extension of time to file their motion for class certification or a motion for class certification.

[18] *Fotjacek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1356 (S.D. Fla. 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla 2d DCA 2006)); *Hap v. Toll Jupiter L.P.*, No. 07-81027-CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 27, 2009) (citing *Tuckish v. Pompano Motor Co.*, 337 F.Supp.2d 1313, 1320 (S.D. Fla. 2004)).

[19] *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000).

conclusions and their "formulaic recitation of a cause of action's elements will not do."[20] Despite amendment, Plaintiffs fail to make a *prima facie* case for damages or equitable relief under FDUTPA, as discussed below.

### A. Plaintiffs fail to identify a deceptive act or unfair practice.

The Court found Plaintiffs plead the first element of a FDUTPA claim in the original complaint, by accepting Plaintiffs' assertion they were lured into purchasing a timeshare because the transactions were in English, instead of Portuguese, as sufficient to support a reasonable inference that Westgate engaged in unfair or deceptive practices.[21] Thus, whether Plaintiffs were objectively mislead or whether offering English-only transaction documents is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers is for another day – for the purposes of this motion only, Westgate will argue how Plaintiffs fail to allege a plausible basis for either the second or third elements of their FDUTPA claim.[22]

### B. Plaintiffs fail to plausibly allege causation between Westgate's alleged conduct and the alleged damages.

Nowhere do Plaintiffs allege, and so they do not tell this Court two important things: one, ***why they bought*** a timeshare; and two, why they ***would not have bought*** the timeshare had they known at the time of the purchase what the English-language Purchase Documents said. In other words, Plaintiffs fail to state what "hooked" them in the Portuguese-language sales pitch and, then, what discovery they learned of in the English-language Purchase Documents that served as a "red flag" that would have stopped them in their tracks. Accepting, *arguendo*, the deceptive or

[20] *Twombly*, 550 U.S. 544, 558, 127 S. Ct. at 1959 (internal quotations omitted).
[21] Order [D.E. 31] at 6.
[22] *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (FDUTPA requires a showing of "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer.").

unfair practice is "luring" the Plaintiffs into a sales presentation in their preferred foreign language and then consummating the transaction in writing, in English, FDUTPA still requires Plaintiffs plead the plausible unfair or deceptive practice itself **caused** them **actual** damages.[23] Nowhere do Plaintiffs identify **what** Westgate representatives told them in Portuguese about timeshare ownership that did not align with the English-language Purchase Documents, that in turn caused them harm. The best Plaintiffs can do is to say that if they had received the Purchase Documents in Portuguese, they would not have purchased their timeshares.[24] Yet, Plaintiffs do not plead what it was, or is, in the Purchase Documents that would have stopped them from consummating the purchase, had they understood the English-language documents when they entered the transaction. Moreover, Plaintiffs fail to identify what, if anything, constituted the "red flag" they never saw in the English language documents until years later, how they learned of the "red flag" until years later, or how they were actually damaged.

For example, was there something in the Truth in Lending Act disclosures that was likely to mislead a consumer or did the Warranty Deed not convey that for which they bargained and so was substantially injurious to a consumer? If so, what was it? The Court cannot tell from what is being alleged because the allegations are pure conclusions, e.g., "Westgate's unfair and deceptive practices are likely to mislead,"[25] and conclusory allegations, unwarranted factual

---

[23] *Hap*, 2009 WL 187938, at *9 (citing *Shibata v. Lim*, 133 F.Supp.2d 1311, 1317 (M.D. Fla. 2000)).

[24] "Had Defendant Westgate provided accurate translations of the sales contract, credit application, and sales-related disclosures to Plaintiffs and Class Members at any time prior to, contemporaneously with or immediately following the tour and sales presentations given to them, Plaintiffs and Class Members would not have entered into a contract to purchase a timeshare interest from Westgate." FAC, ¶ 65.

[25] FAC, ¶ 64.

deductions or legal conclusions masquerading as facts will not prevent dismissal.[26]  Indeed, the Court does not have any obligation to accept as true legal conclusions or unwarranted factual inferences.[27]

Additionally, Plaintiffs allege in conclusory terms that Westgate "failed to disclose and omitted material facts" by not providing Portuguese translations.[28]  Conspicuously, however, Plaintiffs do not identify what was ***not disclosed*** or what was ***omitted*** that would have prevented them at the time of the transaction from signing the Purchase Documents.  In this regard, on causation Plaintiffs cling to conclusory contentions that "[a]s a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged therein, Plaintiffs and Class Members have been damaged . . . ,"[29] and allege nothing more.  As the Supreme Court explained, however, "bare assertions" which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, must be rejected as "conclusory and [are] not entitled to be assumed true."[30]  Plaintiffs' causation conclusions do not allow the Court to draw a reasonable inference that Westgate is liable for the misconduct alleged because Plaintiffs do not plead any facts about what was the alleged disconnect between the marketing pitch and the Purchase Documents – aside from them being presented in two different languages – such that Plaintiffs suffered harm.[31]  A "sheer possibility that [Westgate] has acted unlawfully" is

---

[26] *Desantis v. Marriott Ownership Resorts, Inc.*, No. 6:14-cv-733-Orl-31KRS, 2014 WL 6389772, at *1 (M.D. Fla. 2014) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) and *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

[27] *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

[28] FAC, ¶ 65.

[29] FAC, ¶ 67.

[30] *Iqbal,* 556 U.S. at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[31] *Twombly*, 550 U.S. at 556 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

insufficient, and "factual allegations must be enough to raise a right to relief above the speculative level."[32]  The Court here should reject the bare recitals of causation being offered as a substitute for plausible facts.

In sum, the only thing Plaintiffs' FAC makes clear is that they are experiencing **buyer's remorse** years after the timeshare interest sale was consummated.  Given the chance to replead, Plaintiffs still fail to allege objective or plausible facts. There continues to be a causal gap between the sales presentation and consummation of the purchase, and damages supposedly discovered years later, which Plaintiffs describe only in formulaic terms. These conclusory assertions are insufficient to survive a motion to dismiss under *Twombly* and *Iqbal,* and insufficient to support a necessary element for a FDUTPA claim.[33]

### C.  Plaintiffs fail to allege grounds for actual damages.

A plaintiff may only recover "actual damages" incurred "as a consequence of a violation of the statute."[34]  Under FDUTPA, "actual damages" are defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."[35]  "This is because '[t]he act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the

---

[32]  *Id.* at 555–56.

[33]  *See Jovine v. Abbott Laboratories, Inc.*, 795 F.Supp.2d 1331, 1344 (S.D. Fla. 2011) ("Here, Plaintiff's FDUTPA claim alleges damages in only the most conclusory terms: 'As a direct and proximate results of Defendants' violations of the FDUTPA as alleged herein, Plaintiff … suffered damages.' [ . . . ] Such a conclusory allegation cannot support a claim.").

[34]  *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 993 (Fla 4th DCA 2004).

[35]  *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

consumer.'"[36] Section 501.212(3) further provides that FDUTPA does not apply to a claim for damage to property other than the property that is the subject of the consumer transaction. Accordingly, under FDUTPA, the term "actual damages" does not include special or consequential damages.[37] Finally, "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment."[38]

Plaintiffs now allege, solely in a single paragraph of the FAC, that they "have suffered damages in that they purchased timeshare interests from Defendant Westgate that were not as valuable as Defendant Westgate represented those timeshare interests to be."[39] Plaintiffs, however, have ***not*** made any other allegations in the FAC in connection with the Portuguese-language marketing, the English-language Purchase Documents, and the timeshare interests they purchased. Indeed, Plaintiffs do not allege anywhere else in the FAC that Westgate made any representations to them about the ***value*** of the timeshare interests being marketed, or ***anything else*** about the timeshare interests, for that matter.

Plaintiffs fail to plead any specific facts indicating ***what*** Westgate's representatives told them about the timeshare in the Portuguese-language marketing presentation, other than the representatives having "extolled the alleged benefits of the purchase of a timeshare from Westgate."[40] This conclusory statement is devoid of any factual support for Plaintiffs' allegation that there was a deceptive disconnect between the Portuguese-language sales pitch and the English-language execution documents such that the "value" of the timeshare interest was

---

[36] *Rodriguez*, 38 So. 3d at 180 (citing *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985)).

[37] *Rodriguez*, 38 So. 3d at 180 (citing *2001 S. Dixie Highway, Inc.*, 872 So. 2d at 994).

[38] *Rollins*, 951 So. 2d at 873.

[39] FAC, ¶ 68.

[40] FAC, ¶ 38.

misrepresented to the Plaintiffs.[41]   For example, Plaintiffs do not allege that the timeshare interests were marketed as being worth a certain amount and then Plaintiffs learned that value changed.  All Plaintiffs plead is a recitation of the law on actual damages under FDUTPA.  This is insufficient.  Conclusory allegations, legal conclusions, or unwarranted factual deductions are not enough to establish a necessary element. Because Plaintiffs fail to allege plausible facts as to actual damages, the FDUTPA count must be dismissed for failure to state a claim.

### D.  Plaintiffs still cannot obtain rescission under FDUTPA.

Plaintiffs' claim for "damages in the amount of the purchase price actually paid by them as they would not have purchased timeshare interests from Westgate in the first instance but for the deceptive and unfair trade practices alleged," and then later specifically seek "rescission of the timeshare purchase contracts,"[42] is, principally, a rescission claim hiding in plain view. Rescission is unavailable under FDUTPA, and this Court has previously dismissed Plaintiffs' attempt to obtain rescission under FDUTPA.[43]   FDUTPA does not provide for any equitable

---

[41] *See Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824–25 (Fla. 4th DCA 2010) (emphases added) ("The Dorestins did not prove actual damages connected with the failure to supply the window buyer's guide. *The cost of the service contract was not the actual damage of failing to supply it*. If the buyer's guide had been disclosed, it would have revealed that the original warranty had expired.  Thus, if the Dorestins wished to protect themselves against potential repairs and defects, they would have purchased the extended warranty, which they did. Moreover, the Dorestins have already collected on the extended warranty plan for repairs needed to the vehicle. *Having accepted its benefits, they should now be estopped from asserting that they should recover its expense under FDUTPA*.  *See Billings v. City of Orlando*, 287 So. 2d 316, 318 (Fla. 1973) ('[A] person may be estopped from asserting rights otherwise existing by virtue of the acceptance and retention, by one having knowledge or notice of the facts, of benefits from a transaction, instrument, regulation or statute which he might have rejected or contested.').")

[42] FAC, ¶¶ 69 & 81.

[43] Order [D.E. 31] at 7.

relief other than a declaratory judgment or an injunction (for which Plaintiffs also fail to properly allege plausible grounds).[44]

### E. Plaintiffs fail to allege grounds for equitable relief.

Plaintiffs fail to plead anything other than conclusory allegations for why they are entitled to equitable relief such as a declaratory judgment or an injunction. In like manner, Plaintiffs' claims for equitable relief suffer from the infirmity as their claim for actual damages and rescission – a lack of connection between Westgate's alleged conduct and the alleged grievance suffered by the Plaintiffs.

Plaintiffs' prayers for equitable relief seek not only to prevent Westgate from holding tours in any language other than English if Westgate will not provide both English and non-English-language Purchase Documents, but also to require Westgate to translate the original Purchase Documents into Portuguese (and apparently in every other conceivable language), and to allow, *i.e*., legislate, that Plaintiffs to have ten days from the day of receipt of the translated Purchase Documents to rescind their purchases, if they so choose. Taken together, Plaintiffs' prayer for equitable relief is another attempt to seek rescission under FDUTPA, this time by way of the Timeshare Act. Such a result is unavailable because FDUTPA does not allow for rescission as a remedy, as noted *supra*.[45]

Further, Plaintiffs' demand that Westgate translate the Purchase Documents is confusing and circular. Plaintiffs imply in their FDUTPA count that had they been able to read the Purchase Documents in their preferred language they would not consummated the sale. But

---

[44] *Parr v. Maesbury Homes, Inc.*, No. 6:09-cv-1268-Orl-19GJK, 2009 WL 5171770, at *6 (M.D. Fla. Dec. 22, 2009) (dismissing FDUTPA count to the extent it sought rescission of a purchase agreement).

[45] Further, Plaintiffs seek the exact same types of equitable relief in their Count II, and, as discussed, *infra*, novel approaches to the Timeshare Act should be viewed with a commonsense approach.

Plaintiffs fail to identify what in the Purchase Documents would have alerted them to forego the sale. Then, Plaintiffs demand this Court order Westgate to translate the Purchase Documents into their preferred language of Portuguese so that they can review the documents and decide whether to rescind. So, either the Plaintiffs somehow learned what was in the Purchase Documents that would have stopped them from proceeding with the sale (but are not, for some reason, identifying it in the FAC), *or* the Plaintiffs still do not know what is contained in the Purchase Documents (because they allege they cannot read them), and are bringing this action to obtain that translation, which means that the Plaintiffs cannot say that there is something amiss in the Purchase Documents, because ***they do not know what they say***. This is illogical and fails to state a clear entitlement for damages that this Court can remedy.

To be sure, Plaintiffs fail to allege ***how*** they were aggrieved. Assuming, *arguendo*, it is enough for Plaintiffs to allege that the practice of marketing in a non-English language and then having customers execute English-language documents is misleading (deceptive) or unfair, Plaintiffs then fail to follow that up with an actual grievance they suffered because of this practice because ***they do not allege that they did not want to purchase a timeshare interest***. In fact, Plaintiffs do not allege anything negative about timeshare interest ownership, and leave such allegations to inference instead of actually pleading them. Plaintiffs want to imply that timeshare ownership is negative *per se* instead of pleading what was wrong with their purchase such that they were aggrieved – in fact, all Plaintiffs are implying is that timeshare interest ownership is the damage itself.

Moreover, the fact that they kept their timeshare interests for two to four years before filing suit implies that none of the Plaintiffs have been aggrieved by their ownership. Plaintiffs further fail to identify what about the past two to four years revealed about their timeshare

purchase such that they are seeking to undo the sales presently. Overall, Plaintiffs do not allege sufficient and plausible facts to show that they have been aggrieved by the alleged deceptive or unfair conduct they claim occurred and they cannot bootstrap the requirement that they plead *how they were aggrieved* to the *identification of alleged deceptive or unfair conduct*. Accordingly, they have not sufficiently plead grounds for equitable relief, and Count I should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER THE TIMESHARE ACT.

### A. Westgate did not violate any portion of the Timeshare Act.

Plaintiffs allege in the Amended Complaint two new theories of recovery under the Timeshare Act. The first is that Westgate ran afoul of Section 721.02(3), Florida Statutes, by failing to provide the Purchase Documents in Portuguese, and the second is that by virtue of alleging Westgate violated FDUTPA, then Westgate also violated the Timeshare Act under Section 721.26(7)(b), Florida Statutes. Both allegations fail to state a plausible claim.

First, Plaintiffs hinge the success of their claim that Westgate violated Section 721.26(7)(b) on their Count I allegations. Section 721.26(7)(b) provides that: "Any violation of the Florida Deceptive and Unfair Trade Practices Act, ss. 501.201 et seq., relating to the creation, promotion, sale, operation, or management of any timeshare plan shall also be a violation of [Chapter 721, Florida Statutes]."[46] As shown above, Plaintiffs fail to state any claims for relief under FDUTPA because of their failure to provide sufficient and plausible factual bases for causation and damages to be remedied by either monetary or equitable relief. Accordingly, Westgate's same analysis for Count I applies here, and, consequently, Plaintiffs fail to state a *per se* cause of action for violation of Section 721.26(7)(b) of the Timeshare Act.

---

[46] Fla. Stat. § 721.26(7)(b).

Second, Plaintiffs misstate what Section 721.02(3), Florida Statutes, concerns. That provision states that ***the entirety of*** Chapter 721, Florida Statutes, will provide full and fair disclosure to purchasers and prospective purchasers of timeshare plans: "The purposes of this chapter are to: [ . . . ] (3) Provide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans."[47] This provision does not independently require Westgate to provide translations of the English-language Purchase Documents to the Plaintiffs, as Plaintiffs claim Westgate failed to do in violation of Section 721.02(3).[48] Accordingly, Westgate did not violate Section 721.02(3) because there is nothing for Westgate to violate. Plaintiffs wish for the Court to read into Section 721.02(3) a requirement that is ***nonexistent***.

Additionally, Plaintiffs seek the exact same monetary and equitable relief as they do in their FDUTPA count. Because Westgate did not violate any portion of the Timeshare Act, Plaintiffs are not entitled to monetary damages. Further, Plaintiffs' outright prayer for rescission, together with their demand that Westgate cease holding tours in any language other than English

---

[47] Fla. Stat. § 721.02(3).

[48] In fact, the only authority relating to Chapter 721 mentioning producing non-English materials is a Florida Administrative Code provision pertaining to registered "public offering statements" under Fla. Stat. § 721.07. *See* F.A.C. Rule 61B-39.002. This Florida Administrative Code provision does ***not*** require a Fla. Stat. § 721.05(29) "public offering statement" be written in a consumer's preferred foreign language, just that a developer ***may*** use a non-English version, if the Florida Department of Business and Professional Regulation, its Division of Florida Condominiums, Timeshare and Mobile Homes, approves it. If the developer does not choose to use a non-English version of a public offering statement, there is ***no*** requirement to do so. *See* F.A.C. Rule 61B-39.002 (emphasis added) ("(3) The registered [public offering statement] shall be submitted to the division in the English language and any reference, in an approval letter of the division, to the documents comprising the registered POS shall be to such documents in the English language. ***A developer may use non-English versions of the filed documents if: (i) any such document is an accurate translation of the English version that has been approved by the division, and (ii) the developer has identified each translated document in a completed, executed statement using the form prescribed in BPR form 511, Statement of Translation, incorporated herein by reference and effective 3-23-97, a copy of which may be obtained at the address referenced in subsection 61B-39.002(4), F.A.C.*** Upon request by the division, a developer shall promptly deliver to the division a copy of any translated document that has been or is being used in an offering.").

if Westgate will not provide both English and non-English-language Purchase Documents, and requirement that Westgate translate the original Purchase Documents into Portuguese, and allow Plaintiffs to have ten days from the day of receipt of the translated Purchase Documents to rescind their purchases, if they so choose, is, again, another novel attempt – for which there is no legal basis or authority – to permit the Plaintiffs to abandon their timeshare interest contracts. As novel as this approach is, there is no authority for the Court to allow this theory and to permit this recovery.

Here, a commonsense reading of what the Timeshare Act permits and prohibits, and of Plaintiffs' allegations, is warranted. For example, the U.S. District Court for the Southern District of Florida has expressly taken this approach in the face of "novel" approaches to the Timeshare Act. In *McIntyre v. Marriott Ownership Resorts, Inc.*, plaintiffs alleged Marriott misrepresented a fact or created a false or misleading impression regarding a timeshare when, during a sales presentation, a Marriott representative told plaintiffs purchasing title insurance was a required and necessary component of the timeshare purchase.[49] The plaintiffs contended the quality of their special warranty deed rendered their title insurance policy useless because the special warranty deed provided the same protections as the title insurance, and alleged in their complaint that Marriott's "representations that title insurance is necessary are false . . . [and that] by representing that title insurance is necessary, [Marriott] misrepresent[ed] the quality of the Special Warranty Deed and otherwise misrepresent[ed] the need for such protection."[50] As discussed above, Plaintiffs here, too, make a similar logical leap – attempting to create a requirement in Chapter 721, specifically Section 721.02(3), to provide the Purchase Documents in a non-English language, and Sections 721.06 and 721.11 to allow the re-imposition of the ten-

---

[49] Civil Action No. 13-80184-Civ., 2015 WL 162948, at *1 (S.D. Fla. Jan. 13, 2015).
[50] 2015 WL 162948, at *1.

day statutory rescission period – but that leap fails, just as did the leap the *McIntyre* plaintiffs

made, which resulted in a dismissal with prejudice.

The *McIntyre* court drew on its judicial experience and common sense in parsing

plaintiffs' speculative allegations against Marriott:

> The McIntyres' allegations do not permit the Court to infer more than the mere possibility of misconduct. In *Bell Atlantic Corp. v. Twombly,* the Court explained that although the plaintiff had alleged facts that "could very well signify" an unlawful act, the Court need not accept that inference when there is "an obvious alternative explanation." [*Twombly*, 550 U.S. at 567] ***The Court later explained that in "[d]etermining whether a complaint states a plausible claim for relief" a "reviewing court" should "draw on its judicial experience and common sense."*** *Iqbal*, 556 U.S. at 679. ***And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint ... has not shown that the pleader is entitled to relief." Id.*** (internal punctuation omitted) (quoting Fed.R.Civ.P. 8(a)(2)); *accord Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

> [ . . . ]

> In this case, the well-pled facts are that Marriott Ownership Resorts told the McIntyres that title insurance was a necessary component of the timeshare sale. ***From this generic statement, the McIntyres invite the Court to infer that by necessary Marriott Ownership Resorts meant—not that it was simply a condition of the deal—but rather that the McIntyres would need the title insurance to protect them from potential legal exposure that the special warranty deed might not protect them from***. ***The McIntyres' allegations are far too conjectural to support an inference of wrongdoing***. Based on the Court's judicial experience and common sense, the Court does not accept the McIntyres' proffered inference when there is an obvious alternative explanation for the word *necessary* in this context—that Marriott Ownership Resorts was communicating that obtaining title insurance was simply a part of the deal it was offering.

> For these reasons, the McIntyres' claim for misrepresentation under the Florida Vacation Plan and Timesharing Act must be dismissed.[51]

Here, Plaintiffs' conjecture is not only tenuous and conjectural, but ***nonexistent***.

Plaintiffs ask this Court to ***infer*** that Chapter 721 contains language requirements under Section

721.02(3) and to ***infer*** that Sections 721.06 and 721.11 would permit the re-imposition of the

---

[51] 2015 WL 162948, at *3 (emphases added).

ten-day rescission period.  That is simply not the case.  Plaintiffs are unable to allege Westgate was required by law to provide the foreign-language speaking Plaintiffs the legally binding Purchase Documents in Portuguese, Plaintiffs' avowed language of choice.  Plaintiffs fail to state any plausible claim based on a conjecture that Westgate violated Sections 721.02(3) and would be entitled to a novel remedy under 721.06 or 721.11.  Plaintiffs' Count II fails to state a claim.

## REQUEST FOR HEARING

In accordance with Local Rule 3.01(j), Westgate respectfully requests oral argument on this Motion.  As grounds for this request, Westgate submits that the Motion raises legal issues the presentation of which would provide the opportunity to respond to questions that may arise as a result of the parties' briefing of the Motion.  It is estimated that the argument for both sides should take no longer than thirty minutes.

## CONCLUSION

Based on the foregoing, Plaintiffs' putative Amended Class Action Complaint should be dismissed with prejudice.

DATED: <u>September 6, 2016</u>                      Respectfully submitted,

<u>/s/*Richard W. Epstein*</u>
Richard W. Epstein, Esq.
Fla. Bar No. 229091
**Trial Counsel**
Christina Guzman, Esq.
Florida Bar No. 68928
GREENSPOON MARDER, P.A.
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
richard.epstein@gmlaw.com
christina.guzman@gmlaw.com

*Attorneys for Westgate Resorts, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 6, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using CM/ECF which will serve copies to all counsel of record registered to receive CM/ECF notification, and that it was served upon any other counsel and parties in some other authorized manner.

## <u>SERVICE LIST</u>

Michael D. Finn, Esq.
J. Andrew Meyer, Esq.
Patrick A. Kennedy, Esq.
Finn Law Group, P.A.
10720 72nd Street, Suite 305
Largo, Florida 33777
michaeldfinn@finnlawgroup.com
ameyer@finnlawgroup.com
patrick@finnlawgroup.com
pleadings@finnlawgroup.com
*Counsel for Plaintiffs*

/s/*Richard W. Epstein*
RICHARD W. EPSTEIN